IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INTERNATIONAL BROTHERHOOD OF      No. 3:23-cv-00297-HZ
ELECTRICAL WORKERS LOCAL 48,

              Plaintiff,          OPINION & ORDER

     v.

ROSENDIN ELECTRIC, INC.,

              Defendant.


Andrew Toney-Noland
Daniel Hutzenbiler
McKanna Bishop Joffe, LLP
1635 NW Johnson St
Portland, OR 97209

     Attorneys for Plaintiff


Nicolas K. Ball
Paula A. Barran
Richard C. Hunt
Wilson S. Jarrell

Barran Liebman LLP
601 SW Second Ave Ste 2300
Portland, OR 97204

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Defendant Rosendin Electric moves to dismiss the First Amended Complaint ("FAC")

filed by Plaintiff International Brotherhood of Electrical Workers Local 48 ("IBEW Local 48")

for failure to state a claim. Def. Mot. to Dismiss 2, ECF 9. In the alternative, Defendant moves to

strike certain allegations from the FAC. *Id.* at 10. For the following reasons, the Court denies

both motions.

## BACKGROUND

     Plaintiff sued Defendant for violating a collective bargaining agreement ("CBA")

between the parties. Compl., ECF 1. The FAC alleges that the parties were at all relevant times

bound by a written CBA. FAC ¶ 7, Exs. A (CBA), B (Defendant's letter of assent to be bound by

the CBA), ECF 8. The FAC alleges that under the CBA, Plaintiff is the exclusive bargaining unit

for all of Defendant's employees within Plaintiff's geographical jurisdiction. *Id.* ¶ 8 (citing art.

II, § 2.07 of the CBA). Plaintiff further alleges that "the CBA prohibits subcontracting of work."

*Id.* ¶ 9 (citing art. II, § 2.20 of the CBA). The CBA defines the scope of covered work. *Id.* ¶ 10

(citing art. III, § 3.15 of the CBA). Covered work includes "on-the-job work of welding, burning,

brazing, drilling and shaping of all copper, silver, aluminum, angle iron and brackets to be used

in connection with the installation and erection of electrical wiring on equipment." *Id.* The CBA

also creates a grievance procedure. *Id.* ¶ 12 (citing art. I, §§ 1.05-1.10 of the CBA).

     Plaintiff alleges that "[o]n or about March 1, 2022, the Union learned that Rosendin

Electric was using other companies to perform core drilling and metal fabrication work that is

reserved to the Union under the scope of work provision of the CBA[.]" *Id.* ¶ 13 (redlining omitted). Plaintiff alleges that "the Union's Assistant Business Manager Will Hodges and Business Representative Josh Carter were at a Rosendin Electric job site when they observed a pile of metal strut racks that did not match the labeling of metal strut racks typically fabricated at the Rosendin prefabrication shop across the street." *Id.* ¶ 14. Hodges and Carter inspected the strut racks and "observed shipping order forms attached to some of the metal strut racks that noted that the strut racks had been ordered by Rosendin Electric from Wesanco, a company not signatory to the CBA, to be built by Crescent Electric Supply, also non-signatory." *Id.* The FAC alleges that "[b]oth Wesanco and Crescent Electric Supply are known by Hodges and Carter to pay their employees less than the amount in wages required by the CBA." *Id.* "Carter spoke to Steward Garrett Johnson, who confirmed with employees at the Rosendin Electric prefabrication shop that the metal strut racks in question had not been fabricated at the Rosendin Electric prefabrication shop." *Id.*

The FAC alleges that Carter then "met with the Union's internal Grievance Committee to evaluate the merits of a grievance," and the Committee approved moving forward with a grievance. *Id.* ¶ 15. Carter "then reached out to Rosendin Electric General Superintendent Scott Harnar to discuss the matter in pursuit of informal resolution." *Id.* Representatives of both sides met to discuss the matter. *Id.* ¶ 16. According to Plaintiff, "During this meeting, General Superintendent Harnar agreed that Rosendin Electric violated the CBA." *Id.* Carter then emailed Harnar and Defendant's management a proposed remedy. *Id.* ¶ 17. Harnar responded, disagreeing with the position that Defendant had violated the CBA. *Id.* ¶ 18. Plaintiff filed two grievances on or about March 14, 2022. *Id.* ¶ 19. The parties could not resolve the dispute, so it was referred to the Labor-Management Committee. *Id.* ¶ 10. That committee met and failed to

resolve the dispute, sending it to the Council on Industrial Relations for the Electrical

Contracting Industry. *Id.* ¶ 21. On August 16, 2022, the Council declined to rule. *Id.* ¶ 22, Ex. 2

(copy of Council's decision).

Plaintiff filed suit in this Court, alleging breach of contract and violation of the implied

covenant of good faith and fair dealing. *Id.* ¶¶ 24-34. Defendant moves to dismiss both claims for

failure to state a claim, or in the alternative to strike allegations in the FAC detailing the parties'

communications prior to the institution of formal grievance procedures.

## MOTION TO DISMISS

Defendant first moves that the FAC be dismissed for failure to state a claim. Def. Mot. 2-

10. The Court concludes that Plaintiff has stated a claim for relief.

### I.    Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.*

## II.    Application

### A.    Exhaustion of Grievance Procedure

Plaintiff has pleaded claims for breach of contract and breach of the covenant of good faith and fair dealing under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. FAC ¶ 1. The Supreme Court has described federal labor laws as "a statutory scheme premised on the centrality of the right to bargain collectively and the desirability of resolving contract disputes through arbitration." *Livadas v. Bradshaw*, 512 U.S. 107, 117 (1994). The goal of § 301 is to promote "the speedy resolution of grievances by private mechanisms[.]" *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Relying on this federal labor policy, Defendant argues that because the Council on Industrial Relations for the Electrical Contracting Industry made a final and binding decision on the parties' dispute, the Court cannot entertain Plaintiff's claims. Def. Reply 5-7, ECF 12.

Defendant incorrectly frames this case as a challenge to an arbitral award rather than a suit filed after the grievance procedure laid out in the CBA has been exhausted. A plaintiff seeking to enforce a right provided by a CBA generally must exhaust the CBA's grievance procedures before filing a lawsuit. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219 (1985) ("Perhaps the most harmful aspect of the Wisconsin decision [holding that § 301 did not preempt the plaintiff's state-law tort claim] is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement."); *Nat'l Post Off. Mail Handlers Loc. No. 305, LIUNA, AFL-CIO v. U.S. Postal Serv.*, 594 F.2d 988, 991 (4th Cir. 1979) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566 (1960)) ("It is a well-established principle of labor law that a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention."); *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 848 (9th Cir. 2022) (stating that plaintiff employer was "simply required to exhaust the grievance process to which it agreed in the CBA before it can proceed in federal court with [its] claims"), *cert. dismissed sub nom. Columbia Exp. Terminal, LLC v. ILWU*, 142 S. Ct. 2094 (2022).

The CBA outlines a multi-step grievance procedure that culminates in final and binding arbitration. FAC Ex. A at 5-6 (art. I, §§ 1.05-1.10 of the CBA). The relevant provision reads: "Should the Labor-Management Committee ["LMC"] fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding." *Id.* (art. I, § 1.08 of the CBA). The FAC alleges that the LMC "met and failed to resolve the dispute," FAC ¶ 21,

and the Council declined to rule, FAC ¶ 22, Ex. D (copy of decision stating, "In the instant case, the Council declines to rule"). The allegations in the FAC show that Plaintiff exhausted the grievance process, but the process did not resolve the dispute.

In arguing that the Court should defer to the decision—or non-decision—of the Council, Defendant relies on cases addressing enforcement of arbitration awards. *E.g.*, *International Brotherhood of Electrical Workers Local 291 v. Alloway Electric Co.*, No. 1-13-CV-00164-CWD, 2014 WL 3696242, at *8 (D. Idaho July 22, 2014) (holding that decision of LMC in favor of union in dispute between union and employer was enforceable). *Alloway* is inapposite because Plaintiff does not seek or contest the enforcement of an arbitrator's award.[1] Plaintiff alleges that the LMC did not resolve the dispute and the Council declined to rule. FAC ¶¶ 21-22. Plaintiff exhausted the CBA's grievance procedure, but the grievance procedure did not resolve the dispute. It would not promote the policies underlying § 301 to deny Plaintiff the opportunity to pursue a lawsuit where the grievance procedure resulted in the arbitrator declining to rule. *See Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1118 (9th Cir. 1985) (stating that "*premature* judicial intervention would contravene the fundamental federal labor policy of deferring to contractual dispute resolution procedures") (emphasis added). Plaintiff has pleaded exhaustion of its contractual remedies. The Court now turns to the law governing Plaintiff's claims.

//

//

---

[1] Arbitration awards generally must be final and binding to be subject to judicial review. *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). The Court need not address whether any award was final and binding because Plaintiff alleges that there was no award, as the Council declined to rule.

B.       Governing Law

In suits arising under § 301 of the LMRA, federal substantive law applies. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957). When the LMRA does not directly provide that substantive law, "the courts must fashion [it] from the policy of our national labor laws." *Id.* "But state law, if compatible with the purpose of s 301, may be resorted to in order to find the rule that will best effectuate the federal policy." *Id.* at 457. "Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." *Id. See also Loc. 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (holding that a Washington state court erred in applying Washington law in enforcing a CBA). In addition, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the LMRA preempts the plaintiff's claim. *See Lueck*, 471 U.S. at 220. The Ninth Circuit has recognized that a party may bring a claim for breach of the implied covenant of good faith and fair dealing under LMRA § 301. *Local 3-7, Int'l Woodworkers of Am. v. DAW Forest Prods. Co.*, 833 F.2d 789, 794-95 (9th Cir. 1987). Such a claim is to be treated as a breach of contract claim under the LMRA. *See id.*

Plaintiff brings a claim for breach of the CBA. FAC ¶¶ 24-28. Plaintiff also brings a claim for violation of the implied covenant of good faith and fair dealing, which the Court will treat as a breach of contract claim. *Id.* ¶¶ 29-34. Federal law governs both claims, which Plaintiff has pled as claims under the LMRA. *Id.* ¶ 1. Having determined that it may hear Plaintiff's claims, and what substantive law governs those claims, the Court now turns to whether Plaintiff has stated a claim for relief.

C.      Breach of Contract Claim

The Court concludes that Plaintiff has stated a claim for breach of contract under § 301 of the LMRA. Defendant argues that the FAC fails to sufficiently allege a breach of the CBA. Def. Mot. 4-7. According to Defendant, the FAC makes "naked assertions" that the CBA was violated but fails to adequately support those assertions with factual allegations. *Id.* at 7. The Court disagrees.

CBAs are governed by the LMRA rather than the traditional common-law concepts that govern private contracts. *Nw. Administrators, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226 (9th Cir. 1987). "In construing a CBA, [this Court must] apply federal common law principles of contract interpretation, which take into account the policies underlying our national labor laws." *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012). The Court may rely on other law in interpreting a CBA "only if it effectuates the policy [that] underlies federal labor legislation." *Nw. Administrators*, 813 F.2d at 226 (internal quotations omitted). The analysis begins with "the CBA's express written terms." *Alday*, 693 F.3d at 782. The Court is to "interpret written terms in the context of the entire agreement's language, structure, and stated purpose." *Id.* (internal quotations omitted).

The CBA provides that "[w]orkmen employed under the terms of this Agreement shall do all electrical construction and erection work and all maintenance thereon." FAC ¶ 10 (citing art. III, § 3.15(c) of the CBA). The provision further specifies the scope of work included. *See id.* The CBA sets forth a general policy to ground the scope of work provision: "The policy of the workmen employed under this Agreement is to promote the use of materials and equipment manufactured, processed or repaired under economically sound wage, hour and working conditions." *Id.* (citing art. III, § 3.15(a) of the CBA).

The CBA also provides:

> The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

*Id.* ¶ 9 (citing art. II, § 2.07 of the CBA).

Plaintiff has pleaded sufficient facts to plausibly allege that Defendant breached the scope of work provision of the CBA and the no-subletting provision of the CBA. The FAC alleges that Hodges and Carter, two employees of Plaintiff, went to one of Defendant's job sites and saw "a pile of metal strut racks that did not match the labeling of metal strut racks typically fabricated at the Rosendin prefabrication shop across the street." FAC ¶ 14. The FAC alleges that Hodges and Carter saw shipping order forms on the strut racks showing that the strut racks had been ordered from a company that was not signatory to the CBA and were to be built by a different company that also was not signatory to the CBA. *Id.* The FAC alleges that both of these companies "are known by Hodges and Carter to pay their employees less than the amount in wages required by the CBA." *Id.* The FAC alleges that "Carter spoke to Steward Garrett Johnson, who confirmed with employees at the Rosendin Electric prefabrication shop that the metal strut racks in question had not been fabricated at the Rosendin Electric prefabrication shop." *Id.* Plaintiff has sufficiently alleged that Defendant violated the scope of work and no-subletting provisions of the CBA in ordering the strut racks from one non-signatory company and arranging for them to be built by another non-signatory company, both of which allegedly pay lower wages than those mandated by the CBA.

Defendant argues that the lack of certain details renders the FAC insufficient. Defendant notes that Plaintiff does not explain how Hodges and Carter knew that the non-signatory companies involved paid wages lower than those mandated by the CBA. Def. Mot. 5. Plaintiff need not allege facts explaining how Hodges and Carter knew this information. It is enough that Plaintiff has pleaded that they did know this information. Next, Defendant points out that Plaintiff does not explain what happened to the pile of racks. *Id.* It is enough that Plaintiff alleges the strut racks were at Defendant's job site and that they had been manufactured by a non-signatory company that paid lower wages than those mandated by the CBA.

Defendant also asserts that the FAC does not allege that the strut racks fall under core drilling or metal fabrication under the CBA. Def. Mot. at 6. The FAC states, "On or about March 1, 2022, the Union learned that Rosendin Electric was using other companies to perform core drilling and metal fabrication work that is reserved to the Union under the scope of work provision of the CBA[.]" FAC ¶ 13. The next paragraph states, "Specifically, on or about March 1, 2022, the Union's Assistant Business Manager Will Hodges and Business Representative Josh Carter were at a Rosendin Electric job site when they observed a pile of metal strut racks that did not match the labeling of metal strut racks typically fabricated" by Plaintiff's members. *Id.* ¶ 14. These two paragraphs establish that Plaintiff is alleging that the metal strut racks fall under core drilling or metal fabrication under the CBA. Plaintiff need not allege all of the details Defendant argues are lacking. *See* Def. Reply 4. The legal standard in evaluating a motion to dismiss is whether the allegations in the FAC are sufficient to state a claim, not whether additional allegations would help develop the claim. Other district courts have allowed less-developed LMRA claims to proceed. *E.g.*, *Effinger v. Birmingham-Jefferson Cnty. Transit Authortiy*, No. 2:19-CV-00766-KOB, 2020 WL 374667, at *4 (N.D. Ala. Jan. 23, 2020) (holding that plaintiff

had stated a claim under the LMRA where she alleged specific conduct that violated the CBA but did not quote language from the CBA in her complaint). The FAC adequately puts Defendant on notice of the nature of the CBA violation alleged.

In support of dismissal, Defendant cites *Strugala v. Flagstar Bank, FSB*, 839 F. App'x 69, 72 (9th Cir. 2020). In *Strugala*, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's fraud claim for failure to state a claim. *Id.* at 71-72. "The only *facts* Strugala alleged concerning Flagstar's knowledge of falsity were that it changed its mortgage interest reporting practices in 2011 and that it did not inform borrowers of the change." *Id.* at 72 (emphasis in original). The Ninth Circuit concluded, "These facts are 'consistent with' knowing deception, but they are 'just as much in line' with a lawful change in business practices." *Id.* (quoting *Twombly*, 550 U.S. at 554). Plaintiff argues that *Strugala* is inapposite because fraud claims have a heightened pleading standard. Pl. Resp. 8, ECF 10 (citing Fed. R. Civ. P. 9(b)). Heightened pleading standard aside, the factual allegations in *Strugala* are more limited than the factual allegations supporting breach that Plaintiff provided in the FAC. The complaint in *Strugala* required an inference that failure to inform borrowers of the changed reporting practices showed knowing deception; in other words, it showed only "the mere possibility of misconduct." 839 F. App'x at 72 (citing *Iqbal*, 556 U.S. at 679).

Here, Plaintiff alleges that Defendant ordered certain strut racks from companies not signatory to the CBA, rather than fabricating them at Defendant's prefabrication shop, and provides multiple details in support of that allegation. Plaintiff also alleges that it has knowledge that the non-signatory companies pay their workers less than the wages required under the CBA. It is plausible, and not just possible, that Defendant breached the CBA. It is also plausible, as Defendant notes, that Defendant did not breach the CBA. Def. Mot. 6 (suggesting that a different

provision of the CBA might permit the alleged conduct). But Defendant has identified no alternative explanation so convincing that it renders Plaintiff's explanation of the facts implausible. *Starr*, 652 F.3d at 1216. Because Plaintiff and Defendant have presented competing plausible interpretations of the factual allegations in the FAC, Plaintiff's breach of contract claim will not be dismissed. *See id.*

      D.      Good Faith and Fair Dealing Claim

Plaintiff also states a claim for violation of the implied covenant of good faith and fair dealing. "This covenant requires that neither party act to frustrate the object of the contract or destroy or injure the right of the other party to receive the fruits of the contract." *Davis Wire Corp. v. Teamsters Loc. Union No. 117*, 152 F. Supp. 3d 1326, 1330 (W.D. Wash. 2015) (citing *Local 3-7, Int'l Woodworkers of Am.*, 833 F.2d at 795) (cleaned up). What the implied covenant requires depends on the circumstances surrounding the contract. 833 F.2d at 795. For example, in *Davis Wire Corp. v. Teamsters Local Union No. 117*, the district court held that the plaintiff employer stated a claim for breach of the implied covenant of good faith and fair dealing where it alleged that the defendant union funded a class-action lawsuit challenging the rest and meal periods agreed to in the CBA. No. C14-47 MJP, 2014 WL 1338664, at *2 (W.D. Wash. Apr. 2, 2014).

Defendant argues that Plaintiff "in no way describes how or by what actions defendant is purported to have violated this contractual duty" of good faith and fair dealing. Def. Mot. 8. On the contrary, the FAC alleges that in obtaining metal strut racks from companies that pay lower wages than the wages mandated by the CBA, Defendant "undermines the contractual policy of 'promot[ing] the use of materials and equipment manufactured, processed or repaired under economically sound wage, hour and working conditions' as stated in Article III, Section 3.15 of

the CBA." FAC ¶¶ 31-32. Defendant points to another provision of the CBA, which states, "There shall be no restriction covered by this Agreement on the installation of any materials or equipment that are listed as a stock item in the electrical industry catalogs or price lists and furnished as a manufactured product." Def. Mot. 6-7 (quoting art. III, § 3.15(c) of the CBA). The Court agrees with Plaintiff that this provision does not invalidate the claim. Pl. Resp. 10-11. In alleging that Defendant ordered metal strut racks fabricated by non-signatory companies that pay lower wages, rather than having those strut racks fabricated by unionized workers in its own shop, the FAC asserts sufficient facts to support the claim that Defendant frustrated the object of the CBA or injured Plaintiff's right to receive the fruits of the CBA.

The cases on which Defendant relies do not point to a different result here. In *Zanze v. Snelling Servs., LLC*, the Ninth Circuit held that the district court properly dismissed an employee's claims under California law for breach of contract and breach of the duty of good faith and fair dealing against his former employer. 412 F. App'x 994, 996 (9th Cir. 2011). For the breach of contract claim, the plaintiff failed to plead that he had satisfied his duties under his employment agreement such that he was entitled to his commission. *Id.* The plaintiff's good faith and fair dealing claim was dismissed because (as in the present case) it was based on the same underlying facts. *Id.* (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 352, 8 P.3d 1089 (2000)). *Zanze* does not apply here because Plaintiff has stated a claim for breach of contract, so it does not follow that Plaintiff's good faith and fair dealing claim should be dismissed. And while Plaintiff's claims rely on the same underlying facts, they allege violations of different provisions of the CBA, so dismissal of one claim would not necessarily point to dismissal of the other.

Defendant also relies on *Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, No. 6:17-CV-01251-JR, 2018 WL 1528790 (D. Or. Feb. 7, 2018), *findings and recommendation*

*adopted*, No. 6:17-CV-01251-JR, 2018 WL 1528756 (D. Or. Mar. 28, 2018). *Ri Ky* was a suit

between a contractor and a subcontractor for unpaid construction services. *Id.* at *1. The

plaintiff's claim for violation of the covenant of good faith and fair dealing under Oregon law

failed because it alleged only violations of express contractual duties. *Id.* at *2. The plaintiff did

"not identify any facts evincing the breach of any objectively reasonable contractual expectation

outside the express terms of the contract[.]" *Id.* at *3. *Ri Ky* applied Oregon law, not federal law,

but assuming for the sake of argument that the above principles of Oregon law are compatible

with the body of federal labor law, the FAC does identify an objectively reasonable contractual

expectation. Plaintiff alleges a violation of a contractual policy "to promote the use of materials

and equipment manufactured, processed or repaired under economically sound wage, hour and

working conditions." FAC ¶ 10 (quoting art. III, § 3.15(a) of the CBA). Defendant's conduct

may have violated this policy even if it did not violate an express duty of the CBA. And as

Plaintiff points out, the FAC alleges that metal strut racks were "typically fabricated" at

Defendant's shop. FAC ¶ 14. Plaintiff has adequately alleged that Defendant violated an

objectively reasonable expectation under the CBA that members of the Union would fabricate

metal strut racks for Defendant.

      In sum, Plaintiff has stated a claim for breach of contract under the LMRA, both as

breach of an express provision of the CBA and as breach of the implied covenant of good faith

and fair dealing.[2] Because the Court denies Defendant's Motion to Dismiss, it turns now to

Defendant's Motion to Strike.

//

//

---

[2] The Court does not address at this time whether Plaintiff could recover under both theories.

**MOTION TO STRIKE**

Defendant moves in the alternative to strike certain allegations from the FAC, arguing

that they reflect settlement discussions that are inadmissible under Federal Rule of Evidence 408.

Def. Mot. 10. The Court denies the motion.

**I.      Standards**

The court may order stricken from any pleading any insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Granting a

motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft*

*Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of

discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted.

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), *aff'd*,

608 F.3d 1084 (9th Cir. 2010); *see also* Capella Photonics, Inc. v. Cisco Sys., Inc., 77 F. Supp.

3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the

limited importance of pleadings in federal practice and because they are often used solely to

delay proceedings.") (quotation marks and alterations omitted). The court views the pleadings in

the light most favorable to the nonmoving party when considering a motion to strike. *Scott v.*

*PacifiCorp*, No. 1:22-CV-00174-AA, 2022 WL 2452281, at *1 (D. Or. July 6, 2022). The district

court may require a showing of prejudice when considering a motion to strike. *Fantasy, Inc. v.*

*Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (finding risk of prejudice where the allegations at

issue involved "stale and barred charges," would have been burdensome to answer, and were

likely to lead to unwarranted prejudicial inferences), *rev'd on other grounds*, 510 U.S. 517

(1994).

Courts in the Ninth Circuit are divided on whether it is appropriate to move to strike settlement discussions from the pleadings. Some courts consider such motions procedurally premature. *E.g.*, *Baroness Small Ests., Inc. v. BJ's Restaurants, Inc.*, No. SACV 11-468-JST (EX), 2011 WL 13228020, at *2 (C.D. Cal. Sept. 15, 2011) (stating that objections to the admissibility of evidence should be raised on summary judgment or in pretrial motions). But courts in this district do consider motions to strike a settlement discussion from the pleadings. *E.g.*, *Scott*, 2022 WL 2452281, at *2 (granting motion to strike); *City of Tillamook Oregon v. Kennedy Jenks Consultants, Inc.*, No. 3:18-CV-02054-BR, 2019 WL 1639930, at *4-*5 (D. Or. Apr. 16, 2019) (considering motion to strike but concluding that the challenged communications should not be stricken under Rule 408); *Spiva v. Walmart*, No. 6:18-CV-1024-MK, 2019 WL 1063386, at *8 (D. Or. Jan. 18, 2019) (considering motion to strike and recommending that it be denied because the challenged communications were not clearly negotiations or offers to compromise), *findings and recommendation adopted*, No. 6:18-CV-1024-MK, 2019 WL 1062371 (D. Or. Mar. 6, 2019); *Reddy v. Morrissey*, No. 3:18-CV-00938-YY, 2018 WL 4407248, at *2 (D. Or. Sept. 17, 2018) (holding that the defendant failed to show that the challenged communication was part of an attempt to settle or that leaving the communication in the complaint would cause prejudice).

## II.    Application

### A.    Propriety of Motion to Strike

Plaintiff argues that Defendant's motion should be rejected as procedurally premature. Pl. Resp. 17. Consistent with many other courts in this district, the Court will not deny the motion on this basis. But because Defendant has moved to strike the allegations in the FAC at an early

stage of the case, with no opportunity to develop the factual record, the case for striking the allegations is more difficult. Defendant cannot rely on as-yet-undiscovered evidence for context.

      B.      Federal Rule of Evidence 408

Evidence of "(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim" and "(2) conduct or a statement made during compromise negotiations about the claim" "is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007).

As other district courts have observed, determining whether a statement was made during compromise negotiations is a fact-intensive inquiry. *Stewart v. Wachowski*, No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *3-*5 (C.D. Cal. Sept. 28, 2004). The court must determine whether the statement was made in the context of an existing dispute, because "the protections of Rule 408 were designed to encourage the compromise and settlement of existing disputes." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987) (holding that Rule 408 did not cover termination agreements that attempted to condition severance pay on the release of potential claims). *See also Josephs v. Pac. Bell*, 443 F.3d 1050, 1064 (9th Cir. 2006) (holding that district court did not err in admitting statements made by agents of defendant

employer during grievance proceeding over a Rule 408 objection because "the grievance proceeding did not concern [plaintiff employee's] not-yet-filed discrimination claim"). If there is an existing dispute, the court must consider when settlement negotiations have crystallized. *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 783-84 (9th Cir. 2006) (holding that district court did not err in admitting memorandum prepared by the defendant because the document "merely recounted a meeting between Sheriff's Department employees and Wall Data to discuss possible over-use of the RUMBA licenses" at issue in the case and was written a week before settlement discussions crystallized).

In *Scott*, the district court granted the defendant's motion to strike an exhibit to the complaint and a single sentence in the complaint because the exhibit was a settlement communication and the sentence in the complaint quoted that communication. 2022 WL 2452281, at *1. The exhibit was a letter sent from defendant's counsel to plaintiff's counsel and was marked "ER 408 Communication (ORS 40.190)." *Id.* at *2. The letter proposed recording a supplemental easement for the defendant and offered to "modestly compensate" plaintiffs in exchange. *Id.* The court held that "on its face" the letter qualified as a settlement communication. *Id.* In contrast, in *Kennedy Jenks Consultants*, the district court denied the defendant's motion to strike allegations from the complaint because the allegations at issue fell outside the scope of Rule 408. 2019 WL 1639930, at *4-*5. The allegations at issue included an allegation that the plaintiff said it would accept a reasonable settlement offer if it was made. *Id.* at *4.

C.      Application of Rule 408(a) to the FAC

Defendant has not met its burden to show that the challenged allegations in the FAC should be stricken. Defendant objects to the inclusion of certain allegations in paragraphs 15 and 16 of the FAC as well as paragraph 18 in its entirety. Def. Reply 17. Defendant argues that it will

be prejudiced by the presence of those allegations in the FAC. Def. Mot. 13-14; Def. Reply 12-13. According to Defendant, the presence of the allegations in the pleadings "would have a necessarily chilling effect on parties' willingness to engage in negotiations in the first place." Def. Mot. 14. Defendant also points to a risk of "the potential misrepresentation" of the allegations. *Id.* The Court considers each challenged allegation in turn.

Paragraph 15 reads:

> On or about March 3, 2022, Business Representative Carter met with the Union's internal Grievance Committee to evaluate the merits of a grievance. The Grievance Committee gave unanimous approval to move forward with the grievance. Business Representative Carter then reached out to Rosendin Electric General Superintendent Scott Harnar to discuss the matter in pursuit of informal resolution.

FAC ¶ 15. Defendant objects only to the phrase "in pursuit of informal resolution." Def. Reply 17. Viewing the FAC in the light most favorable to Plaintiff, it is unclear that "pursuit of informal resolution" constitutes compromise negotiations. It is not clear from the FAC that at this point the parties had different views on whether the CBA had been violated or that the purpose of the communication was to settle a dispute rather than to determine whether there was a dispute. The Court will not strike any text from Paragraph 15.

Paragraph 16 reads:

> On or about March 7, 2022, at the suggestion of General Superintendent Harnar, Hodges, Carter, and Union Business Manager Garth Bachman met with Harnar and other representatives of Rosendin Electric's management team to discuss the metal strut rack dispute. During this meeting, General Superintendent Harnar agreed that Rosendin Electric violated the CBA.

FAC ¶ 16. Defendant objects to the final sentence only. Def. Reply 17. Plaintiff argues that this sentence does not reference valuable consideration or a compromise of the claim, so it is outside the scope of Rule 408. Pl. Resp. 21. In Plaintiff's view, Harnar's statement "is more properly characterized on its face as an admission by a party opponent under Rule 801(d)(2)." *Id.*

Federal Rule of Evidence 801(d) provides so-called statutory exceptions to the rule against admission of hearsay. In contrast, Rule 408 addresses the relevance of evidence of settlement negotiations. Whether a statement is admissible as statutory non-hearsay says nothing about whether it is admissible under Rule 408. Plaintiff is correct that Harnar's statement does not reference valuable consideration. It might be a statement made during compromise negotiations, but it is unclear from the FAC whether this meeting constituted compromise negotiations. Viewing the FAC in the light most favorable to Plaintiff, the purpose of the meeting was to determine whether there was a dispute or what the contours of the dispute were, similar to the meeting in *Wall Data*. Since no other evidence is available at this stage of the case, Defendant has not met its burden to show that the statement should be stricken. The Court will not strike any text from Paragraph 16.

Paragraph 18 reads:

On March 11, 2022, General Superintendent Harnar responded to Carter's email stating that Rosendin Electric disagreed that it had violated the CBA and wished to discuss the issue with NECA.

FAC ¶ 18. Paragraph 18 does not mention any promise or offer of valuable consideration, and again, it is unclear that these informal discussions constitute compromise negotiations within the meaning of Rule 408. The Court will not strike Paragraph 18.

In sum, no allegations in paragraphs 15 through 18 of the FAC suggest that Defendant ever furnished, promised, or offered a valuable consideration during the discussions between the parties. They only show that Plaintiff proposed an unspecified "remedy." FAC ¶ 17. The Court cannot determine based on the pleadings alone whether Plaintiff promised or offered to accept valuable consideration such that Rule 408(a)(1) might apply. And it is not clear that the informal discussions between the parties involved a disputed claim before Harnar responded to Carter's

email as outlined in paragraph 18. This case is unlike *Scott*, where the district court did not need any additional information to determine that the challenged exhibit to the plaintiff's complaint was a settlement communication. 2022 WL 2452281, at *2. On the limited record before it, the Court is not convinced that Rule 408(a) covers the statements in paragraphs 15 through 18 of the FAC. Thus, there is no need to consider Plaintiff's argument that the challenged statements may be admissible for valid purposes under Rule 408(b). The Court will deny Defendant's Motion to Strike without prejudice as to a later motion based on a more developed record.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss or in the Alternative Motion to Strike [9].

IT IS SO ORDERED.


DATED:_____June 12, 2023_____.



MARCO A. HERNÁNDEZ
United States District Judge