IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 48,

                Plaintiff,

    v.

ROSENDIN ELECTRIC, INC.,

                Defendant.

No. 3:23-cv-00297-HZ

OPINION & ORDER

Daniel Hutzenbiler
Charese Rohny
Krista Michelle Cordova
McKanna Bishop Joffe, LLP
1635 NW Johnson St
Portland, OR 97209

      Attorneys for Plaintiff

Paula A. Barran
Nicolas K. Ball
Richard C. Hunt
Wilson S. Jarrell

Barran Liebman LLP
601 SW Second Ave Ste 2300
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff International Brotherhood of Electrical Workers Local 48 ("IBEW Local 48")

sued Defendant Rosendin Electric for violating a collective bargaining agreement ("CBA")

between the parties. First Am. Compl. ("FAC"), ECF 8. Plaintiff brings claims for breach of

contract and breach of the implied covenant of good faith and fair dealing. *Id.* Plaintiff also seeks

a declaratory judgment that Defendant has violated specified provisions of the CBA. *Id.*

Defendant moves for summary judgment on Plaintiff's claims. ECF 20. For the following

reasons, the Court grants the Motion.

## BACKGROUND

      Plaintiff "is an unincorporated association organized and operated for the purpose of

collectively representing persons employed by Defendant in Oregon and Washington." FAC ¶ 2;

Answer ¶ 2, ECF 16. Defendant is a corporation engaged in the electrical contracting business in

Oregon. FAC ¶ 3; Answer ¶ 3. During the time relevant to this case, Defendant "has been bound

by a written collective bargaining agreement between [Plaintiff] and the Oregon-Columbia

Chapter of the National Electrical Contractors Association ('NECA')[.]" FAC ¶ 7; Answer ¶ 7;

Barran Decl. Ex. 1 (CBA), ECF 21. The CBA is also referred to as an "Inside Agreement."

## I.    Relevant CBA Provisions

      Relevant to this Motion, the CBA contains the following provisions on employer and

union rights and covered work:

**RECOGNITION CLAUSE:**
Section 2.07. The employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to the rates of pay, wages and hours of employment.

Barran Decl. Ex. 1 at 9 (Art. II, § 2.07 of CBA).

**ANNULMENT/SUBCONTRACTING:**
Section 2.20. The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

All charges of violations of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

*Id.* at 12-13 (Art. II, § 2.20 of CBA).

**SCOPE OF WORK:**
Section 3.15a). The policy of the workmen employed under this Agreement is to promote the use of materials and equipment manufactured, processed or repaired under economically sound wage, hour and working conditions.

Section 3.1(b). There shall be no restriction of the use of tools or machinery simplifying work (such as pipe cutting machines, electric and pneumatic drills, electric hoists and such other tools as may be agreed upon between the employer and the Union) but all such tools must be operated by workmen employed under the terms of this agreement and be provided with modern safety features.

Section 3.15(c). Workmen employed under the terms of this Agreement shall do all electrical construction and erection work and all maintenance thereon. This shall include the installation and maintenance of all electrical lighting, heating and power

equipment. Such work shall include on-the-job work of welding, burning, brazing, drilling and shaping of all copper, silver, aluminum, angle iron and brackets to be used in connection with the installation and erection of electrical wiring on equipment.

All work of chasing and channeling necessary to complete any electrical work and all on-the-job handling and moving of any electrical materials, equipment and apparatus shall be performed by workmen employed under this Agreement. The cutting and threading of all conduit and nipples shall be performed by workmen employed under this Agreement. There shall be no restriction covered by this Agreement on the installation of any materials or equipment that are listed as a stock item in the electrical industry catalogs or price lists and furnished as a manufactured product.

*Id.* at 21 (Art. III, § 3.15 of CBA).

The CBA includes a provision about a Code of Excellence:

Section 12.01. The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations. Therefore each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

*Id.* at 38-39 (Art. XII, § 12.01 of CBA).

The CBA also lays out the following grievance procedure:

**GRIEVANCES/DISPUTES:**

Section 1.05. There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

Section 1.06. All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07. All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of

the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08. Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09. When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10. A grievance must be filed with the Union within five working days from the alleged grievance or knowledge of the alleged grievance.

*Id.* at 5-6 (Art. I, §§ 1.05-1.10 of CBA).

## II.    Grievance 22-097

On March 1, 2022, Josh Carter, a business representative for Plaintiff, visited Defendant's QTS Data Center jobsite. Carter Decl. ¶¶ 1, 6, ECF 27. He was accompanied by Will Hodges, Plaintiff's assistant business manager, and Garrett Johnson, Defendant's shop steward. *Id.* ¶ 6. Carter "noticed a pile of prefabricated strut racks." *Id.* He first believed they had been built at Defendant's prefabrication shop, but after inspecting them, he realized they had been ordered from a third-party vendor, Wesanco. *Id.* ¶ 7. Carter knew this because the strut racks were not labeled the way they were at Defendant's prefabrication shop, and a Wesanco shipping order was attached to some of the strut racks. *Id.* During the visit, Johnson confirmed with Dale Husky at the prefabrication shop that the strut racks had not been assembled there. *Id.* ¶ 8. Carter, Hodges, and Johnson spoke to the jobsite superintendent, Clint Quinn, who confirmed that the strut racks had been ordered from a third party. *Id.* ¶ 9. Quinn suggested that they speak with Scott Harnar, Defendant's general superintendent. *Id.*

Carter contacted Harnar to discuss the strut racks, which he believed had been ordered in violation of the CBA, and attempted to resolve the matter without filing a grievance. *Id.* ¶ 10. Harnar requested an in-person meeting. *Id.* Plaintiff's internal Grievance Committee met on March 3, 2022, and unanimously voted to move forward with a grievance. *Id.* ¶ 11. Carter was present at the meeting. *Id.* Leadership for Plaintiff and management for Defendant met on March 7, 2022. *Id.* ¶ 12. During the meeting, Harnar agreed that Defendant violated the Inside Agreement between the parties when it ordered the strut racks. *Id.*

On March 10, 2022, Carter emailed a suggested remedy for the grievance to Harnar and other representatives of Defendant's management. *Id.* ¶ 13. Harnar responded, "We respectfully disagree. Rosendin would like to discuss this with NECA." *Id.* Ex. P. Plaintiff filed a grievance, Grievance No. 22-097, on March 14, 2022. Barran Decl. Ex. 3. The grievance alleged that Defendant violated the CBA "by subcontracting bargaining unit work out to a non-signatory contractor. Subcontractor-Wesanco prefab of 1170 various racks, not stock items or in their catalog." *Id.* Plaintiffs alleged that this violated sections 2.20, 2.07, 3.15, and 12.01 of the CBA (cited above). *Id.*

On May 26, 2022, the parties held a labor-management meeting, and NECA stated that the parties needed to discuss a possible change to their agreement. Carter Decl. ¶ 15. The parties met other times to try to settle the grievance, but could not reach an agreement. *Id.* ¶ 17. The parties argued their positions on the grievance in front of the Council on Industrial Relations on August 16, 2022. *Id.* ¶ 18. Plaintiff's brief in support of its position stated that sections 2.20 and 3.15(a) and (c) of the CBA were relevant to the dispute. Barran Decl. Ex. 6 at 2-3. Plaintiff's primary argument was that the strut racks were not stock items under section 3.15 and thus needed to have been made by its workers rather than third-party contractors. *Id.* at 3-6. Plaintiff

also argued that constructing the strut racks was within the scope of work under section 2.20. *Id.* at 6. The Council issued a decision stating, "In the instant case, the Council declines to rule." Barran Decl. Ex. 7. Grievance 22-097 is the basis of this lawsuit.

### III.   Grievance 22-116

On November 17, 2022, Plaintiff filed Grievance 22-116 against Defendant. Barran Decl. Ex. 5. Plaintiff alleged that Defendant violated the CBA "by subcontracting bargaining unit work out to a non-signatory contractor. The subcontractor provided a custom product not listed in their electrical industry catalog or parts list." *Id.* Plaintiff alleged that the order violated sections 2.20, 2.07, 3.15, and 12.01 of the CBA. *Id.*

Plaintiff explained that "[o]n November 3, 2022, Business Representative Wayne Tanner was made aware that prefabricated trapeze hangers had been delivered to Rosendin[.]" Barran Decl. Ex. 8 at 3. Plaintiff filed Grievance 22-116, which was later expanded to include prefabrication of device boxes. *Id.* The parties agreed that Wesanco and ISAT were the companies used to build the trapeze hangers, and PROFAB was used to build the device boxes. *Id.* The Labor-Management Committee addressed the grievance on July 12, 2023. *Id.* The parties had not reached an agreement but had not yet declared impasse. *Id.* However, Defendant filed for the Council to review the grievance. *Id.*

On July 31, 2023, Plaintiff submitted a brief to the Council in support of Grievance 22-116. Barran Decl. Ex. 8. In the brief, Plaintiff wrote:

> This is not the first time that Local 48 and NECA have been in front of CIR regarding a violation of the scope of work covered by the Inside Agreement. In August of 2022, the parties presented Grievance #22-097, which addressed the choice by signatory contractor Rosendin Electric, Inc. (Rosendin) to have strut racks built by non-bargaining unit members.

*Id.* at 2. Plaintiff continued: "The parties are before you again over this same prefabrication issue. Rosendin continues to have strut racks (specifically trapeze hangers) built by workers that are not covered by the Inside Agreement, and has now expanded that contract violation to include construction of" other items. *Id.* Plaintiff explained that although it believed several provisions of the CBA were relevant to the grievance, "the most decisive language is found in Article III, Section 3.15(c), which addresses the scope of work." *Id.* Plaintiff wrote that it "put aside arguments around such issues as the definition of subcontracting and if the work requires an electrical license" because "[t]he resolution should ultimately rest on how CIR interprets Section 3.15(c)[.]" *Id.* at 4.

On August 15, 2023, the Council found "that external guidance on the dispute would hinder the recent progress made between the parties to reach resolution[.]" Barran Decl. Ex. 9 at 1. The Council concluded "that a local resolution of the issues would be advantageous." *Id.* It stated, "The grievance is therefore remanded back to the parties, and they are directed to continue their efforts to reach a mutually agreeable resolution to their dispute." *Id.* The Council directed the parties "to seek the assistance of the Executive Director of the Western Region of NECA and the IBEW Ninth District International Vice-President, who shall each make themselves available to facilitate a resolution between the parties." *Id.* It is undisputed that the parties have not reached a resolution on Grievance 22-116. Def. Mot. 24; Pl. Resp. 10, ECF 25. Carter opines that "further negotiations between Rosendin and IBEW, Local 48 regarding prefabricated items would be futile." Carter Decl. ¶ 19.[1]

---

[1] Both parties mention other grievances that involve either different alleged violations of the CBA by Defendant or violations of the CBA by an employer other than Defendant. *See* Def. Mot. 7-8 (addressing Grievances 22-096 and 22-098), 11 n.4 (addressing Grievance 22-115); Pl. Resp. 7-11 (addressing Grievances 22-096, 22-098, and 22-115). The Court concludes that these grievances are not germane to this case and therefore declines to address them further.

**IV.    Procedural History**

Plaintiff filed suit on March 1, 2023, based on Grievance 22-097. Compl., ECF 1. Plaintiff's first claim for relief, for breach of contract, alleges that Defendant violated the CBA by ordering the strut racks from a third-party fabricator. FAC ¶¶ 24-28. Plaintiff's second claim for relief, for breach of the implied covenant of good faith and fair dealing, alleges that in ordering the strut racks from a third party, Defendant "undermine[d] the contractual policy of 'promot[ing] the use of materials and equipment manufactured, processed or repaired under economically sound wage, hour and working conditions' as stated in Article III, Section 3.15 of the CBA." *Id.* ¶¶ 29-34.

Defendant moved to dismiss the case for failure to state a claim. ECF 9. The Court denied the motion. Op. & Ord., ECF 14. In so ruling, the Court held that Plaintiff had adequately pleaded exhaustion of the grievance procedure. *Id.* at 7. Defendant then answered the FAC, asserting as its first affirmative defense that Plaintiff failed to exhaust the grievance process outlined in the CBA. Answer ¶ 43. On January 11, 2024, Defendant filed the present Motion for Summary Judgment. The Court took the Motion under advisement on February 15, 2024.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The Court concludes that it cannot grant Plaintiff the relief sought because the grievance process has not been exhausted, and this Court's continued involvement would contravene federal labor law and the policies it embodies. The Court also concludes that it lacks jurisdiction to vacate the Council's decision on Grievance 22-097. The Court therefore dismisses Plaintiff's claims without prejudice.

## I. The Labor Management Relations Act

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, governs Plaintiff's claims. The statute contains a subchapter on conciliation of labor disputes. 29 U.S.C. §§ 171-183. The subchapter's statement of policy emphasizes that collective bargaining and

negotiation between employers and employees is the preferred method to resolve labor disputes. *Id.* § 171. The Supreme Court has described federal labor law as "a statutory scheme premised on the centrality of the right to bargain collectively and the desirability of resolving contract disputes through arbitration." *Livadas v. Bradshaw*, 512 U.S. 107, 117 (1994). *See also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (The goal of the LMRA is to promote "the speedy resolution of grievances by private mechanisms[.]"). "The grievance procedure is . . . a part of the continuous collective bargaining process." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960). "The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Id.*

The LMRA gives district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a) (Section 301 of the LMRA). The Supreme Court has held that this provision "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 841 (9th Cir. 2022), *cert. dismissed sub nom. Columbia Exp. Terminal, LLC v. ILWU*, 142 S. Ct. 2094 (2022) (citing *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 450-51 (1957)). "[A] 'central tenet of federal labor-contract law under § 301 is that the arbitrator, not the court, has the responsibility to interpret the labor contract in the first instance.'" *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)) (cleaned up). Accordingly, § 301 preempts state-law claims that are grounded in the CBA or require interpretation of the CBA. *Id.*

A plaintiff seeking to enforce a right provided by a CBA generally must exhaust the CBA's grievance procedures before suing. *See Allis-Chalmers Corp.*, 471 U.S. at 219 ("Perhaps the most harmful aspect of the Wisconsin decision [holding that § 301 did not preempt the plaintiff's state-law tort claim] is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement."); *Nat'l Post Off. Mail Handlers Loc. No. 305, LIUNA, AFL-CIO v. U.S. Postal Serv.*, 594 F.2d 988, 991 (4th Cir. 1979) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965); *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 566 (1960)) ("It is a well-established principle of labor law that a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention."); *Columbia Exp. Terminal*, 23 F.4th at 848 (stating that plaintiff employer was "simply required to exhaust the grievance process to which it agreed in the CBA before it can proceed in federal court with [its] claims").

If a plaintiff has failed to exhaust the grievance procedure, the defendant may move for summary judgment on the plaintiff's claims based on failure to exhaust, and the district court should review the record to determine whether there are any genuine disputes of material fact relevant to exhaustion. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. However, if the district court grants the motion for summary judgment, it must view the facts in the light most favorable to the plaintiff. *Id.* at 1173.

Courts have a limited role in reviewing arbitrators' decisions. They can decide whether the arbitration agreement covers the dispute or whether the arbitrator had power to render a decision. *Warrior & Gulf. Nav. Co.*, 363 U.S. at 582 ("[T]he judicial inquiry under s 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made."). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). If a court finds that an arbitrator's "procedural aberrations rise to the level of affirmative misconduct," the court should not decide the case on the merits; it should vacate the award and leave open the possibility of further proceedings if permitted under the governing agreement. *Id.* at 510. If the arbitrator's award is unclear, the district court should remand it to the arbitrator to clarify and interpret the award. *Hanford Atomic Metal Trades Council, AFL-CIO v. Gen. Elec. Co.*, 353 F.2d 302, 307-08 (9th Cir. 1965) (district court properly remanded award to arbitral board to clarify uncertainty in its terms rather than interpreting the award itself). *See also Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) ("It is firmly established that the courts may resubmit an existing arbitration award to the original arbitrator for interpretation or amplification.").

## II. Application

### A. Breach of Contract Claim

Applying the above legal principles to the facts, the Court concludes that it cannot grant the relief Plaintiff seeks. Plaintiff asks the Court to try the case by jury, enter judgment that Defendant breached Sections 2.07, 3.15, and 12.01 of the CBA, and award damages. FAC 9.

Plaintiff also asks the Court to order Defendant to restore the disputed work to Plaintiff and to stop breaching the CBA. *Id.* In the alternative, Plaintiff asks for a declaratory judgment that Defendant breached the specified provisions of the CBA. *Id.* In granting this relief, the Court would be required to interpret and apply provisions of the CBA that are the subject of an unexhausted grievance. This the Court cannot do.

Defendant argues that the Council's decision remanding Grievance 22-116 prevents the Court from evaluating Grievance 22-097 on the merits because the two grievances are so similar. Def. Mot. 6. Defendant points out that both grievances allege subcontracting of work to an outside subcontractor and allege violations of the same provisions of the CBA. *Id.* at 9. Defendant also points to language in Plaintiff's own brief in support of Grievance 22-116 that characterizes the disputes as involving the same issue. *Id.* at 10. Defendant states that since the Council remanded the grievance to the parties, they continue to seek a resolution, but have not reached agreement. *Id.* at 12. Defendant argues that the parties are still bound by the Council's directive to continue to negotiate. *Id.* Defendant also notes that the CBA provides that when a dispute is referred to arbitration, the status quo is not to be changed until an agreement has been reached or a ruling has been made. *Id.* at 6 (citing CBA § 1.09). Defendant argues that all of Plaintiffs' claims must be dismissed because of failure to exhaust the grievance process. *Id.*

Plaintiff acknowledges the general rule that "courts are prohibited from examining the merits of the underlying industrial dispute in actions brought to enforce or vacate a labor arbitration award." Pl. Resp. 18. Plaintiff argues that this case is different because the arbitrator declined to rule, and provides several reasons in support of the argument that the grievance process has been exhausted. The Court concludes that Plaintiff's arguments lack merit.

In ruling on Defendant's motion to dismiss, the Court held that Plaintiff had adequately pleaded exhaustion. Op. & Ord. 7. Plaintiff argues that the matter has been resolved and exhaustion has been established. Pl. Resp. 15. Defendant notes that the FAC did not disclose that Grievance 22-116 was pending, and states that this new information should change the Court's analysis. Def. Mot. 17. Defendant is correct. At the motion to dismiss stage, the Court addressed exhaustion based on the limited allegations in the FAC and minimal argument from the parties on the issue. On the present record, the Court concludes that Plaintiff has not exhausted the grievance process, for the reasons discussed below.

Plaintiff argues that Grievance 22-116 is different from Grievance 22-097. Pl. Resp. 11-12. According, to Plaintiff, the two grievances are "very similar," but they involve "different prefabricated items, that were delivered to a different building on different dates, and affected different hours, resulting in different damages." *Id.* at 11 (citing Carter Decl., Bachman Decl. Ex. K, ECF 26). Plaintiff acknowledges that the prefabrication issue is the same in both grievances: Defendant ordered "strut racks (specifically trapeze hanger) built by workers who are not covered by the Inside Agreement[.]" *Id.* at 12. Grievance 22-116 was, as Plaintiff notes, more expansive than Grievance 22-097, as Plaintiff alleged that Defendant ordered several other prefabricated items from outside sources as well. *Id.*; *see* Bachman Decl. Ex. L at 2 (Brief in support of Grievance 22-116).

The Court concludes that the differences between Grievance 22-097 and 22-116 are not material. Plaintiff concedes that Grievance 22-116 alleges the same violations of the CBA as Grievance 22-097. That it also alleges other violations of the CBA based on additional prefabricated products does not change the analysis. The issue raised in Grievance 22-097—whether Defendant violated the CBA by ordering prefabricated strut racks from a non-signatory

company—is before the arbitrators in Grievance 22-116. Even the fabricator is the same: both Grievance 22-097 and Grievance 22-116 allege that Defendant ordered the strut racks from Wesanco. Bachman Decl. Ex. D at 1 (Brief in support of Grievance 22-097), Ex. L at 3 (Brief in support of Grievance 22-116). Grievance 22-116 also alleges that strut racks were ordered from a second company, ISAT. *Id.* Ex. L at 3. The second company is immaterial because Grievance 22-116 encompasses the order of the same product from the same company as Grievance 22-097. Plaintiff's own brief in support of Grievance 22-116 acknowledged that the legal issues were the same as in Grievance 22-097. Bachman Decl. Ex. L at 2.

It does not matter that the dates of the violations, locations of the jobsites, or hours of work are different between the two grievances. *See* Bachman Decl. ¶ 32, Carter Decl. ¶ 14; Pl. Resp. 8. Both grievances ask the arbitrators to decide the same legal issue. Resolution of the central issue in Grievance 22-116—whether Section 3.15 of the CBA permits Defendant to order the strut racks from a non-signatory third party rather than have Plaintiff's workers fabricate them—would also resolve that issue for Grievance 22-097. A difference in calculation of damages based on different dates, hours, and jobsites does not create a genuine dispute of material fact on exhaustion. If the Court allowed Plaintiff's suit to proceed, it would undermine the Council's judgment that continued negotiation between the parties was the appropriate course of action and intrude on the Council's role of interpreting the CBA in the first instance.

Plaintiff argues that further negotiation between the parties would be futile. Pl. Resp. 16. It relies on Carter's declaration. Carter states, "Given previous efforts, my three years of bargaining experience, and Rosendin's current positions on the CBA provisions, further negotiations between Rosendin and IBEW, Local 48 regarding prefabricated items would be futile." Carter Decl. ¶ 19. Defendant counters that "futility is not an exception to the rule that a

court may not take over the role of an arbitrator." Def. Reply 10, ECF 29. Defendant states that

Plaintiff "has an exclusive remedy with the National Labor Relations Board as to whether there

was a failure to bargain in good faith." *Id.* (citing 29 U.S.C. §§ 158(a)(1), (5)). And Defendant

asserts that Carter's declaration is irrelevant because the NLRB, not the Court, has jurisdiction

over collective bargaining. *Id.* at 11. Defendant also notes that Plaintiff cites no legal authority in

support of its futility argument. *Id.*

      The Court agrees with Defendant that no futility exception applies here. Plaintiff points to

no precedential cases finding exhaustion of the grievance process futile in a dispute between a

union and an employer. The Ninth Circuit has recognized a futility exception to the exhaustion

requirement for cases in which an employee sues an employer for violation of the CBA or a

union for breach of the duty of fair representation. *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317

(9th Cir. 1990). Courts recognize that a risk of bias exists there because the group to which the

employee must submit a grievance is generally made up of representatives chosen by the

defendant employer or union. *See id.* (citing *Steele v. Louisville & Nashville Ry.*, 323 U.S. 192,

206 (1944)). Here, in contrast, the grievance procedure in the CBA sets various stages at which

the grievance must be considered by bodies made up of representatives from both sides,

culminating in review by a neutral arbitrator. Barran Decl. Ex. 1 at 5-6 (Art. I, §§ 1.05-1.10 of

CBA). In hearing a grievance, the Council sits an equal number of representatives for each side.

*Id.* Exs. 7, 9 (Council rulings listing six employer representatives and six union representatives).

There is no inherent risk of bias. Plaintiff does not argue that it cannot get a fair hearing from the

Council or that it faces bias during any other stage of the grievance process. No evidence in the

record suggests that the Council is biased.

Even assuming a futility exception might apply, Plaintiff has not shown a genuine dispute over whether exhaustion would be futile. The Council remanded Grievance 22-116 to the parties to continue to negotiate a resolution. Grievance 22-116 addresses the same legal issue as Grievance 22-097 (indeed, Carter's declaration as to futility refers to the issue of "prefabricated items" rather than a specific grievance). Plaintiff argues that the two sides tried to negotiate a resolution as directed by the Council, but they are entrenched in their positions, so further negotiations are futile. Pl. Resp. 16. Assuming this is true, the next course of action is to notify the Council that the parties have complied with the directive to negotiate further on Grievance 22-116 and are at an impasse. If the Council agrees that further negotiation is futile and the issue is ripe for ruling, it can proceed to interpret the disputed provisions of the CBA and issue a decision. Plaintiff does not argue that the Council cannot do so or that it would not give Plaintiff a fair hearing. Even viewing the record in the light most favorable to Plaintiff, exhaustion would not be futile.

Next, Plaintiff argues that the Council relinquished jurisdiction over Grievance 22-097. Pl. Resp. 17. Plaintiff states that "here an arbitrator declined to rule, and thus failed to provide a vehicle for meaning or content." *Id.* Plaintiff asserts that on this procedural posture, "[s]ome form of judicial review is necessary because the arbitrator 'personally relinquished jurisdiction of the dispute, [and] the arbitration process would be left at a dead standstill'" without intervention from the Court. *Id.* (quoting *New United Motor Mfg., Inc. v. Auto Workers Loc. 2244*, 617 F. Supp. 2d 948, 955 (N.D. Cal. 2008)). Defendant counters that *New United Motor* involved a petition to vacate an arbitration award and that it "involved an arbitrator who explicitly declined the request to decide a remedy after ruling on the merits." Def. Reply 9. Defendant also states that "[t]he court did not contemplate taking over the case (as Local 48 requests this Court to do)

and instead declined to vacate the arbitration award." *Id.* Defendant is correct. In addition, the

arbitrator in *New United Motor* was selected by the parties. 617 F. Supp. 2d at 950. Here, as

Defendant points out, "[t]he Council cannot relinquish jurisdiction because the Council is the

decision maker and final arbitrator" designated by the CBA. Def. Reply 9. The Court rejects

Plaintiff's argument that the Council relinquished jurisdiction over Grievance 22-097. The

Council declined to rule. Its decision said nothing about relinquishing jurisdiction. There is no

basis to conclude that the Council relinquished jurisdiction. If Plaintiff was uncertain about the

meaning of the decision or what further action was available, it could have contacted the Council

to seek clarification.

Plaintiff similarly asserts that in declining to rule, the Council manifested an infidelity to

its obligation. Pl. Resp. 19. Plaintiff states, "Even if the court here found that declining to rule is

a final order, the Council's declining to rule as a final order, manifests an infidelity of the

arbitrator's obligation to decide cases, and a relinquishment in this particular dispute." *Id.* In

support, Plaintiff cites *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363

U.S. 593, 597 (1960). In *Enterprise Wheel*, the Supreme Court stated:

> [A]n arbitrator is confined to interpretation and application of the collective
> bargaining agreement; he does not sit to dispense his own brand of industrial
> justice. He may of course look for guidance from many sources, yet his award is
> legitimate only so long as it draws its essence from the collective bargaining
> agreement. When the arbitrator's words manifest an infidelity to this obligation,
> courts have no choice but to refuse enforcement of the award.

*Id.* As Defendant states, this case stands for the proposition that a court should refuse to enforce

an award where it manifests an infidelity to the arbitrator's obligation to rely on the CBA. Def.

Reply 12. Plaintiff cites no authority for the proposition that the arbitrator's "infidelity" to the

obligation permits the Court to interpret the CBA in the arbitrator's stead. And as Plaintiff

acknowledges, no explanation was provided for why the Council declined to rule. Pl. Resp. 19.

The Council's decision may not have helped Plaintiff resolve the grievance, but there is no basis for the Court to infer any inappropriate purpose from the Council's decision not to rule. Events following the Council's decision on Grievance 22-097 indicate there was no inappropriate purpose. The Council did not decline to rule on Grievance 22-116, instead remanding to the parties to continue negotiating, and directing them to seek assistance in doing so. Barran Decl. Ex. 9. The legal issues raised in Grievance 22-097 are still live and still undergoing the grievance process.

Plaintiff argues that the Council's decision on Grievance 22-097 was not a final order. Pl. Resp. 20. The Court agrees. Declining to rule is not a final award—it is not an award at all. Defendant argues that even if no award was entered, the Court can and should vacate and remand Grievance 22-097 to the Council for further proceedings. Def. Reply 12. The Court concludes that it lacks jurisdiction to either affirm the Council's decision or vacate and remand it. "The arbitrator's award must normally be final and binding before such review is undertaken." *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). "Only in the most extreme cases will judicial review of a nonfinal award be proper." *Id.* The Court agrees with Plaintiff that the present situation is unusual. But it is not the type of situation where judicial review is appropriate. The Ninth Circuit has indicated that review of a nonfinal award may be appropriate when the court "must decide the merits of the appeal in order to determine the interim nature of the arbitrator's award." *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1294 n.4 (9th Cir. 1987). Review of a nonfinal award may also be appropriate when all that remains is a ministerial act, such as computing back pay or applying a final piece of evidence when the arbitrator has already indicated how it should be applied. *Millmen Loc. 550*, 828 F.2d at 1375

n.1. Here there is no award for the Court to review and no decision to vacate. The proper course under these circumstances is for the Court to dismiss the case so that the parties can return to the arbitrator to request clarification or guidance.

Defendant also asserts that Plaintiff could have sought to vacate the Council's decision under the Federal Arbitration Act ("FAA"). Def. Mot. 5. "[T]he FAA is applicable toward all collective bargaining agreements except those involving employees engaged directly in channels of commerce." *Cascade Steel Rolling Mills, Inc. v. United Steelworkers Int'l Union Loc. 8378*, No. 21-CV-01090-YY, 2022 WL 5247555, at *8 (D. Or. Aug. 12, 2022), *findings and recommendation adopted*, No. 21-CV-01090-YY, 2022 WL 16781999 (D. Or. Nov. 8, 2022) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001) (holding that only contracts of employment for transportation workers are exempt from the Federal Arbitration Act)). Under the FAA, a district court may vacate an award "upon the application of any party to the arbitration" if, among other reasons, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Defendant argues that the Court should vacate and remand Grievance 22-097 to the Council. Def. Reply 12. Because there is no award to vacate, even an unclear or imperfect one, the Court concludes that it lacks authority to vacate the Council's decision. In sum, the Court cannot decide Plaintiff's breach of contract claim or vacate the Council's decision, so the claim must simply be dismissed.

B.     Claim for Breach of the Implied Covenant of Good Faith & Fair Dealing

Defendant moves for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because it is preempted by § 301 and the grievance process has not been exhausted. Def. Mot. 24-26. Plaintiff appears to have pleaded the claim

under federal law. FAC 8 (pleading the claim under the Restatement (Second) of Contracts § 205, not Oregon common law). In ruling on Defendant's motion to dismiss, the Court recognized that the LMRA governs interpretation of the CBA. Op. & Ord. 9. Plaintiff's claim is not preempted by § 301 because it was not brought as a state-law claim. *See Jackson v. S. California Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989) (explaining that § 301 preempts state-law claims). Regardless, it must be dismissed because, just like Plaintiff's breach of contract claim, it is the subject of a pending grievance. The claim is based on the same facts as the breach of contract claim and rests on a violation of the contractual policy in Section 3.15 of the CBA. FAC ¶¶ 31-32. Section 3.15 is the provision at issue in Grievances 22-097 and 22-116. Plaintiff states that the claim is an alternative basis for the breach of contract claim. Pl. Resp. 32. The claim must therefore be dismissed for the same reasons as the breach of contract claim. Plaintiff argues that genuine disputes of fact remain on the merits of the claim. Pl. Resp. 30-32. Because there is no genuine dispute as to whether Plaintiff failed to exhaust the grievance process, the Court declines to address the merits of the claim.

C. Claim for Declaratory Relief

Plaintiff seeks in the alternative a declaratory judgment that Defendant has breached Sections 2.07, 3.15, and/or 12.01 of the CBA. FAC 9. Defendant argues that granting this relief would be inappropriate because the issue was or could have been raised in pending grievance proceedings. Def. Mot. 26-27. This issue was raised in Grievances 22-097 and 22-116. Plaintiff's request for declaratory relief asks the Court to decide the same issues that are the subject of the ongoing grievance process. It would not be appropriate to grant this relief. The Court dismisses Plaintiff's claim for declaratory relief.

D.      Resolution of this Case

The Court cannot decide Plaintiff's claims or grant the relief Plaintiff seeks because doing so would require the Court to resolve a dispute that is undergoing the grievance process. The Council has instructed the parties to continue negotiating a resolution, and it is not the Court's place to override that instruction. The Court therefore declines to address the parties' arguments about the merits of the claims. *See* Def. Mot. 17-23; Pl. Resp. 22-30. The material issues of fact Plaintiff identifies pertain to the merits of the claims. Pl. Resp. 12-13. They are not material to the analysis of whether the Court can reach the merits. Plaintiff has not identified genuine disputes of material fact on the exhaustion issue, and it has cited no legal authority supporting the Court's ability to entertain the claims on the current procedural posture. The Court lacks jurisdiction to vacate and remand the Council's decision on Grievance 22-097 because the Council declined to rule, so there is no final award to review. The Court will therefore dismiss Plaintiff's claims without prejudice.

## CONCLUSION

Defendant's Motion for Summary Judgment [20] is GRANTED. The Court dismisses Plaintiff's First Amended Complaint [8] without prejudice.

IT IS SO ORDERED.

DATED:   April 11, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge